UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:
        Charles F. Cefalu,                                                Case No. 17-11382
                                                                              Chapter 7
                                    Debtor.
_____

        U.S. Trustee,
                                Plaintiff(s),
            v.
                                                               Adv. No.  18-90011
        Charles F. Cefalu,
                                Defendant(s).
_____

APPEARANCES:


William Harrington                                                       Lisa Penpraze, Esq.
United States Trustee for Region 2
Leo W. O'Brien Federal Building
11A Clinton Avenue, Room 620
Albany, NY 12207

Charles F. Cefalu
Debtor, *pro se*
P.O. Box 188
Saratoga Springs, NY 12866


Robert E. Littlefield, Jr., United States Bankruptcy Judge

### MEMORANDUM-DECISION AND ORDER

Currently before the Court is the United States Trustee's ("UST") adversary proceeding against Charles F. Cefalu ("Cefalu" or "Debtor") requesting denial of the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4), (5), or, in the alternative, to dismiss pursuant to 11 U.S.C. § 707(a).  The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(I) and (J), and 1334(b).

1

## PROCEDURAL HISTORY

The Debtor voluntarily commenced this chapter 7 case on July 27, 2017. (Joint Stipulation of Facts 1, hereinafter "Stip".) After receiving several extensions, the UST timely filed this adversary proceeding on April 16, 2018.[1] (ECF No. 1.) With the Debtor's consent, the UST filed an Amended Complaint on December 4, 2018 and the Debtor filed an Amended Answer on February 21, 2019. The Court held a trial on April 11, 2019 and, by stipulation and order entered on June 24, 2019 (ECF No. 43), received additional evidence into the record and took the matter under advisement.

## BACKGROUND

After graduating Union College with a bachelor's degree, the Debtor began a business career spanning many different roles and specialties. During his professional life, he has held various licenses and certifications including Series 7 and 66 licenses, mortgage and insurance sales licenses, a real estate broker's license, and a certified real estate instructor license. (Stip 13.) More recently, he formed Apache Property Management, LLC ("Apache"), a home building business he has operated since 2013. (Stip 11, 14, 17.) In addition to Apache, two other family-owned businesses are relevant to this adversary proceeding even though he does not have an ownership interest in the businesses. The first is Saratoga Siding Specialists, LLC, which his brother, Duane Cefalu ("Duane"), wholly owns, and the second is Millenium Properties, Inc., which his mother, Sophie Cefalu, wholly owns.

Through his business dealings, the Debtor accumulated an astonishing $1,252,043.06 of unsecured debt compared to the $12,127.40 he has in assets.[2] The Debtor's schedules and

---

[1] Other parties in interest have commenced three more adversary proceedings objecting to discharge and/or dischargeability. *See* Brescia v. Cefalu, Adv. Proc. 17-90068; Francis v. Cefalu, Adv. Proc. 17-90069; Commonwealth Land Title Insurance Company v. Cefalu, Adv. Proc. 19-90010.

[2] His bankruptcy petition ("Petition") indicates that his debts are primarily business debts. (Stip 9.)

2

statement of financial affairs only show marginal monthly income at the time of filing and incomes of $14,947 and $46,087 for 2015 and 2016, respectively. While not an owner of Saratoga Siding or Millenium, the Debtor was signatory and payee on numerous checks from each business. (Stip 21–22.) Additionally, at various times, the Debtor possessed checks payable to cash from Saratoga Siding and Millenium, both pre and post-petition. (Stip 23.) In the process of analyzing the Debtor's financial condition,

> the United States Trustee requested that the Debtor produce bank statements and cancelled checks for all bank accounts held or used by the Debtor, whether individual, joint, business, in trust for, or other designation, including but not limited checking, savings, money market, mutual funds, and brokerage accounts or any other banking and financial accounts to which the Debtor had access during the period of January 1, 2017 through August 31, 2017.

(Stip 24.)

In response, the Debtor produced the following bank statements:

| 1 | Apache Property Management LLC | Bank of America | -1368 |
|---|---|---|---|
| 2 | Apache Property Management LLC | Capital Bank | -1708 |
| 3 | Apache Property Management LLC | Merchants Bank/Community Bank | -4176 |
| 4 | Apache Property Management LLC | People's United Bank | -5369 |
| 5 | Charles F. Cefalu | Capital Bank | -2186 |
| 6 | Charles F. Cefalu | Citizens Bank | -9838 |
| 7 | Charles F. Cefalu | Community Resource Federal Credit Union | -147 |
| 8 | Charles F. Cefalu | Pentagon Federal Credit Union | -4893 |
| 9 | Principessa I LLC | Capital Bank | -2194 |
| 10 | Telstar Realty Group Inc. | Capital Bank | -2925 |
| 11 | Telstar Realty Group Inc. | Capital Bank | -2941 |
| 12 | Charles F. Cefalu | TD Ameritrade | -7701 |
| 13 | Charles F. Cefalu | Merrill Edge Retirement Account | -8U58 |
| 14 | Charles F. Cefalu | Merrill Edge Retirement Account | -4F39 |

## FINDINGS OF FACT

In addition to the stipulated facts outlined above, the Court makes the following findings of fact based on the record developed at trial.

1. In response to the UST's 2004 motion, the Debtor produced two unorganized banker's boxes full of documents. (Tr. 12:5–7.)

2. The UST's office needed several full days to sort through the documents just to determine what the Debtor supplied. (Tr. 13:4–6.)

3. The Debtor did not provide any documents responsive to the UST's requests regarding Saratoga Siding. (Tr. 14:23–25.)

4. The UST only obtained records from Saratoga Siding through a subpoena. (Tr. 14:23–25.)

5. Saratoga Siding operated primarily as a fiber cement business but also provided other services. (Tr. 54:4–24.)

6. Saratoga Siding and Apache used the same mailing address of P.O. Box 287 Saratoga Springs, NY 12866. (UST Exs. 11, 12, 13.)

7. At the time of the Section 341 meeting, Duane did not know how to apply fiber cement siding despite owning the business. (Tr. 50:17–24.)

8. Duane was not involved in Saratoga Siding's day-to-day operations. (Tr. 88:9–10.)

9. Duane worked full-time at Key Corp during the entire period that Saratoga Siding operated. (Tr. 46:21–47:4.)

10. The Debtor wrote many checks to himself and to cash from Saratoga Siding's bank account. (Tr. 179:12–18.)

11. The Debtor has no documentary proof that the checks to cash were used to pay subcontractors.

12. Saratoga Siding stopped doing business in 2018. (Tr. 53:13–18.)

13. Millenium was formed in 2017 and invested in two rental properties with four total units. (Tr. 167:10–24; 168:19–24.)

14. Apache managed Millenium's properties since they were purchased. (Tr. 168:9–18.)

15. The Debtor lives in one of Millenium's apartments but has no ownership interest in the business. (Tr. 171:12–14.)

16. The Debtor's debts are primarily business debts that flow from personal guarantees on Apache's obligations. (Tr. 171:15–19.)

17. Apache engaged in various lines of business including home building, fiber cement siding, and property management. (Tr. 136:10–19; 139:8–13.)

18. Directly prior to filing this case, Apache was working on its largest business project. (Tr. 171:20–172:5.)

19. The Debtor has no personal ownership interest in Principessa I LLC ("Principessa"). (Tr. 185:23–186:2.)

20. Apache is a fifty percent member of Principessa. (Tr. 134:9–11.)

21. Suzanne Finkelstein was the other fifty percent member of Principessa. (Tr. 134:12–23.)

22. The Debtor managed Principessa. (Tr. 134:10.)

## ARGUMENTS

The UST argues, as it relates to the Section 727(a)(3) cause of action, that the Debtor failed to keep or preserve recorded information, including books, records, and papers from which the Debtor's financial condition and business transactions might be ascertained. Moreover, the

Debtor is a sophisticated businessman who must be held to a higher standard of document preservation and production. Additionally, the UST asserts that the Debtor has not provided the Court with circumstances that justify failing to keep such records.

The Debtor claims that the UST's 727(a)(3)'s "objection is less about what was produced but more about how it was produced." (Debtor's Post-Trial Brief ECF No. 42 at 4). Specifically, the Debtor argues that the statute does not require pristine record keeping, and, ultimately, the UST obtained all of the documents that he sought. Moreover, the Debtor argues that he should not be required to produce Saratoga Siding's business records because he does not own that business.

## DISCUSSION

*I.      Denial of Discharge Pursuant to Section 727(a)(3)*

Under Section 727(a)(3), "[t]he court shall grant a debtor a discharge, unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case." 11 U.S.C. § 727(a)(3). Section 727(a)(3) functions "to insure that the trustee and the creditors receive sufficient information to enable them to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 837 (Bankr. E.D.N.Y. 2000). Under Section 727(a)(3), intent is not required to deny discharge. *Jacobowitz v. Cadle Co. (In re Jacobowitz)*, 309 B.R. 429, 440 (S.D.N.Y. 2004).

"It is up to the bankruptcy court's broad discretion to determine on a case by case basis whether the records produced by the debtor are sufficient." *Sethi*, 250 B.R. at 838 (citing *Krohn*

6

*v. Frommann (In re Frommann)*, 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993)). While the debtor does not need to keep a perfect accounting of books and records, the debtor must provide sufficient written evidence from which his "present financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy." *Sethi*, 250 B.R. at 838. "[A]lthough [Section] 727(a)(3) focuses on records relating to the debtor's personal financial affairs, his failure to keep adequate financial records regarding the business transactions of a closely held corporation that are necessary to determine his personal financial affairs may result in the denial of discharge." *O'Hearn v. Gormally (In re Gormally)*, 550 B.R. 27, 49 (Bankr. S.D.N.Y. 2016) (quoting from *Stillwater Liquidating LLC v. Gray (In re Gray)*, No. 14-11851, Adv. Pro. No. 14-02235, 2016 Bankr. LEXIS 804, at *9–10 (Bankr. S.D.N.Y. Mar. 15, 2016)).

    II.    The UST Has Met the Initial Burden

To prevail, the UST "must 'show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained.'" *Desiderio v. Devani (In re Devani)*, 535 B.R. 26, 32 (Bankr. E.D.N.Y. 2015) (quoting *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 235 (2d Cir. 2006). Courts begin this analysis by determining whether the debtor has provided full disclosure. *See Cacioli*, 463 F.3d at 236. Second, courts consider how the debtor produced the books and records. *See Sethi*, 250 B.R. at 838. Third, courts across the Second Circuit apply an eight-factor test to determine whether the documents and records actually produced by the debtor are sufficient to ascertain the debtor's financial condition. *Id.* For the following reasons, the UST has met his initial burden.

    A. <u>Complete Disclosure</u>

7

The debtor first needs to provide books and records from which his financial condition may be ascertained. *See Sethi*, 250 B.R. at 838. "Where the bankrupt was involved in many transactions of an extensive character, a substantially accurate and complete record of his affairs is a prerequisite to his discharge." *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936). "*In Re Underhill* and the statute itself make clear that section 727(a)(3)'s complete disclosure requirement extends beyond the property of the estate to include all 'business transactions' which shed light on the financial condition of the debtor." *Office of the Comptroller Gen. of Republic of Bol. ex rel. Bolivian Air Force v. Tractman*, 107 B.R. 24, 27 (S.D.N.Y. 1989). In this case, Cefalu did not provide ***any records*** for Saratoga Siding or Millenium responsive to the UST's requests. Moreover, as explained in greater detail below, the disclosure for his personal finances and Apache is also incomplete. While the UST was able to obtain some records for Saratoga Siding and Millenium through third-party subpoenas, "the question is whether the [UST] demonstrated a prima facie case that debtor's financial history could not be constructed from the records ***provided by the debtor***." *Bronfman v. O'Hara (In re O'Hara)*, No. 1:11-CV-0807 (LEK), 2013 U.S. Dist. LEXIS 58167, at *23–24 (N.D.N.Y. Apr. 23, 2013) (emphasis added).

B.  How the Books and Records are Produced

The manner in which the debtor produces documents also has a bearing on whether a debtor's financial condition may be ascertained. "[A] debtor cannot simply place sacks of records before the bankruptcy judge or trustee and request the judge or trustee to sift through the documents and attempt to reconstruct the flow of the debtor's assets." *Frommann*, 153 B.R. at 118; *see also O'Hara*, No. 1:11-CV-0807, 2013 U.S. Dist. LEXIS 58167, at *23. The judge and the trustee "'need not be experienced explorers of a rat's nest of scraps of uncoordinated bits and

8

pieces like parts of some impressionistic puzzle that needs to be solved in order to decipher the financial machinations of the debtor.'" *Frommann*, 153 B.R. at 118 (quoting *In re Morando*, 116 B.R. 14, 16 (Bankr. D. Mass 1990)).

Here, the Debtor provided the UST two uncategorized and disorganized bankers boxes of documents in response to the UST's 2004 request. (Tr. 12:5–6; Tr. 12:19–20). The documents had no cover page and lacked any sort of inventory. (Tr. 12:10–14). The UST's paralegal testified that it took her "several days to go through everything and categorize and organize everything." (Tr. 13:5–6). Cefalu made no attempt to organize the documents to allow the UST an opportunity to determine whether his financial condition could be ascertained. Cefalu's document production is precisely the rat's nest that Section 727(a)(3) proscribes and supports denying his discharge.

C. <u>Eight Factor Test</u>

In addition, courts focus on eight factors to determine whether the debtor's financial condition may be ascertained from the debtor's books and records: (i) whether the debtor was engaged in business and if so, the complexity and volume of the business; (ii) the amount of the debtor's obligations; (iii) whether the debtor's failure to keep or preserve books and records was due to the debtor's fault; (iv) the debtor's education, business experience and sophistication; (v) the customary business practices for record keeping in the debtor's type of business; (vi) the degree of accuracy disclosed by the debtor's existing books and records; (vii) the extent of any egregious conduct on the debtor's part; and (viii) the debtor's courtroom demeanor. *Sethi*, 250 B.R. at 838.

Here, application of these eight factors supports a finding that Cefalu's financial condition cannot be ascertained.

**(i) Whether the debtor was engaged in business, and if so, the complexity and volume of the business**

Cefalu operated Apache and Saratoga Siding, two closely held family businesses. Cefalu started Apache in 2013 and engaged in the retail construction and fiber cement siding business, as well as providing property management services for Millenium. Additionally, although his brother Duane owns Saratoga Siding, Cefalu's role running the business cannot be overstated as Duane is, at best, completely clueless about Saratoga Siding. Duane testified that he was not sure if he owned Saratoga Siding and was not involved in the day-to-day operation of the business. (Tr. 52:10–11; Tr. 65:15–17; Tr. 66:5; 88:9–10) ("I don't really know [who owns Saratoga Siding].") Duane also did not know how to apply fiber cement siding and previously testified that fiber cement siding is mixed by hand in a wheelbarrow.[3] (Tr. 50:17–25). Not only did Cefalu run the day-to-day operations but he did so without any of Duane's involvement as Duane had a full-time job with Key Corp while Saratoga Siding was in business. (Tr. 46:21–47:4). Specifically, Cefalu managed projects, was a signatory on Saratoga Siding checking accounts, oversaw business development for Saratoga Siding, and paid certain personal expenses - including his daughter's college tuition - with Saratoga Siding's checking accounts. (Tr. 210:11–13; Tr. 106:1,17–20; Tr. 108:8–10). For all of these reasons, this factor weighs against Cefalu as he engaged in at least two complex businesses that had projects throughout New York State.

**(ii) The amount of the debtor's obligations**

Cefalu seeks to discharge $1,252,043.66 of unsecured debt, an astounding amount especially when compared to Cefalu's $12,127.40 in assets. (Tr. Ex. 1). Based on the Court's administration of thousands of chapter 7 cases over the last twenty-five years, this amount

---

[3] Fiber cement siding does not require mixing and the siding comes ready to install. (Tr. 49:13–19.)

10

greatly exceeds the debt of almost all individual cases and weighs against Cefalu. *Sethi*, 250 B.R. at 839 ("The total obligations which the debtor seeks to discharge in this no-asset case are very substantial in amount - in excess of $ 2,000,000."); *Doubet, LLC v. Palermo (In re Palermo)*, 370 B.R. 599, 618 (Bankr. S.D.N.Y. 2007) (holding that the debtor's $2,751,299 obligations are substantial, especially in light of his $5,000 in disclosed assets).

  **(iii) Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault**

Although the Court analyzes Cefalu's justifications later in this decision, it is appropriate to note that Cefalu does not contend that the documents "were destroyed or lost due to some event beyond his control, such as fire or theft." *See Sethi*, 250 B.R. at 840; *cf. Pereira v. Young (In re Young)*, 346 B.R. 597, 617 (Bankr. E.D.N.Y. 2006) (holding that the debtor's inability to produce documents was beyond her control when the documents were stolen). Therefore, the third factor also weighs against Cefalu.

  **(iv) The debtor's education, business experience, and sophistication**

Applying the fourth factor, the Court finds that Cefalu is an educated and sophisticated businessman. He holds a B.A. degree from Union College and has held several types of financial advisor licenses as well as a real estate broker's license. (Stip. 13). Additionally, by the time he filed this bankruptcy case, Cefalu had been operating Apache for six years and Saratoga Siding for two years. Since Cefalu is an educated, sophisticated, and experienced businessman, the fourth factor also weighs heavily against him.

  **(v) The customary business practices for record keeping in the debtor's type of business**

11

Cefalu routinely wrote checks to cash and to himself while operating Saratoga Siding. According to UST's Exhibit 21, these checks totaled more than $98,628.31.[4] Cefalu testified that since his bank was five hours from the job sites, subcontractors demanded cash payments to pay their employees. Cefalu did not produce any documentary evidence at trial that supports this self-serving testimony. *See In re Pimpinella*, 133 B.R. 694, 698 (Bankr. E.D.N.Y. 1991) ("[T]he debtor may not, by oral testimony, supplement that information which is absent from the actual records."). Instead, Cefalu contradicted his own explanation for writing checks to himself when he testified that in one instance that he cashed the check in Buffalo or Amherst and then subsequently met the contractor. (Tr. 110:5–9).

Cefalu's explanation for using cash was considered and rejected in an eerily similar case. *Colonial Bank v. Wynn (In re Wynn)*, 261 B.R. 286, 300 (Bankr. M.D. Ala. 2001). In *Wynn*, the court found that a construction industry debtor who does not keep a record of cash disbursements is completely outside the bounds of logic. *Id.* Further, the court explained that a "careful businessman would ask the payee to sign a receipt evidencing that a given cash disbursement had been received by the payee." *Id.* at 301. Here, just as in *Wynn*, Cefalu's dealings in cash "without adequate controls provides an excellent opportunity for fraud, theft and defalcation." *Id.* For all these reasons, the fifth factor weighs heavily against Cefalu as he operated outside the norms of his industry.

**(vi)    The degree of accuracy disclosed by the debtor's existing books and records**

The Court finds that the degree of the accuracy of Cefalu's records challenging to ascertain because Cefalu provided minimal records for Apache, no responsive records for Saratoga Siding, and minimal records for his personal finances. *See Harrison v. Mavashev (In re*

---

[4] While Exhibit 21 totals $107,628.31, it became clear that one $9,000 transaction was reversed.

*Mavashev)*, 590 B.R. 600, 608 (Bankr. E.D.N.Y. 2018) ("The degree of the accuracy of the records is difficult to ascertain, because the records are incomplete."). As a baseline, courts have found "business account records, such as check stubs, cancelled checks, and bank statements [] inadequate to document complex business transactions involving large amounts of money." *See Morando*, 116 B.R. at 15. Here, Cefalu produced bank statements, certain blueprints, and a 2015 tax return for Apache, which, without more, are inadequate for a business of Apache's size. *See id.* For both Apache and Saratoga Siding, the Court would anticipate additional documents such as contract files for each construction project; written proposals with terms and expected compensation; proposals from subcontractors; notes payable to banks; invoices from suppliers; and building licenses and permits. *See Wynn*, 261 B.R. at 301–02. This is particularly true in this case where the Court ordered the Debtor to provide "[a]ll Documents constituting the contract regarding the Buffalo, NY construction project referred to by the Debtor at the 341(a) first meeting of creditors." (UST Ex. 7, ¶6). Absent any evidence beyond business account records, the Court and the UST have no means to construct and verify Apache's and Saratoga Siding's transactions.

Cefalu also failed to provide adequate books and records to the UST regarding his personal finances. Cefalu produced only produced his 2015 and Amended 2015 tax returns.[5] (Tr. 96:17–19; ECF No. 43). He also testified that he did not know if he had a 1099 from Apache for the 2017 tax year and was "not . . . aware of right at this moment" of a 1099 Tax Form from Saratoga Siding. (Tr. 98:19–22; Tr. 100:4–6, 14–16). "'[W]hen certain documents essential to determining a debtor's history are missing,' including, as here, 'tax returns and the

---

[5] Even if Cefalu gave the UST more recent tax returns, tax returns for business debtors "are not a significant indicia of record keeping [and] . . . clearly do not provide sufficient documentation, since they fail to provide itemization of transactions." *Frommann*, 153 B.R. at 118 (quoting *In re Goldstein*, 123 B.R. 514, 524–25 (Bankr. E.D. Pa. 1991)).

13

underlying financial records, a debtor's records are necessarily too scant to provide an accurate picture [of a debtor's] accounts and finances." *Lisa Ng v. Adler (In re Adler)*, 494 B.R. 43, 69 (Bankr. E.D.N.Y. 2013) (quoting *Schackner v. Breslin Realty Dev. Corp.*, No. 11-CV-2734, 2012 U.S. Dist. LEXIS 1001, at *13 (E.D.N.Y. Jan. 5, 2012) and *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 56 (E.D.N.Y. 2010)).  Thus, the sixth factor also weighs heavily against Cefalu.

**(vii)    The extent of any egregious conduct on the debtor's part**

Applying the seventh factor, the Court finds that Cefalu engaged in egregious conduct. Cefalu testified he paid subcontractors in cash without adequate controls. *See Moreo*, 437 B.R. at 57–58 (holding that debtors who paid employees "off the books" in cash to avoid taxes on those payments had engaged in egregious conduct).  The Court has no means to independently verify these cash payments.  Additionally, Cefalu routinely plucked funds from the Saratoga Siding account to pay personal expenses such as tuition payments to his daughter's college and his gym membership fees. (Tr. 106:1, 17–20; Tr. 108:8–10).  In effect, Cefalu used the Saratoga Siding account as a personal piggy bank.  While the Court is not responsible for investigating possible under-reporting or other violations of the Internal Revenue Code, Cefalu's conduct is egregious nonetheless and weighs heavily against him. *Id.*

**(viii)    The debtor's courtroom demeanor**

Cefalu was an uncooperative witness to the point that the Court had to intervene.  The Court warned Cefalu that "we're rapidly approaching a hostile witness" and told Cefalu "not [to] have a semantic gamesmanship back-and-forth." (Tr. 99:15, 23–24).  The Court also struggles with Cefalu's lack of sincerity.  For example, the Debtor testified that he could barely pay for food and rent but testified that he drove a Mercedes Benz E350 on the date of his bankruptcy petition. (Tr. 129:9–20).  Thus, Cefalu's demeanor at trial also weighs against him.

To summarize, the Court's analysis of all of the foregoing leads to the conclusion that the UST met the burden by a preponderance of the evidence that Cefalu's personal financial condition and business transactions cannot be ascertained.

### III.  The Debtor Has Not Provided a Justification to Overcome His Inadequacy to Keep Books and Records

After the plaintiff shows that the debtor has not kept and preserved books or records, the debtor has the burden to justify the lack of books or records. *See Sethi*, 250 B.R. at 838–39. In the Second Circuit, courts apply several factors to consider a debtor's justifications: "'[(1)] the education, experience, and sophistication of the debtor; [(2)] the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor; and [(3)] any other circumstances that should be considered in the interest of justice.'" *Cacioli*, 463 F.3d at 237 (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1231 (3d Cir. 1991)).  In this case, the Court must hold Cefalu to a higher standard as it is indisputable that Cefalu is a sophisticated debtor with years of experience running multiple complex businesses. *Sethi*, 250 B.R. at 839, 842 ("A sophisticated debtor is generally held to a higher level of accountability in record keeping and it is insufficient for the debtor to assert an honest belief that he does not need to keep records.").

It is through this lens that the Court analyzes Cefalu's justifications for his failure to maintain adequate books and records.  Although not entirely clear, it appears that Cefalu advances two general justifications.  First, he blames his mother for failing to keep adequate books and records.  Second, he uses vague and general assertions regarding his attempts to produce documents.  As analyzed below, Cefalu's justifications are not sufficient to defeat the UST's 727(a)(3) cause of action.

Cefalu attempts to blame his mother to justify, among other things, his failure to produce any responsive records from Saratoga Siding even though the record shows she is merely a bookkeeper and not a professional accountant. (Tr. 52:9). He testified that "[he] was out in the field, and she copied the documents" and that she "handled all the accounting in the office on behalf of the company." (Tr. 114:1–2; 213:6–7). As a sophisticated businessman, Cefalu cannot use his mother as a bookkeeping scapegoat. *C.f. Cacioli*, 463 F.3d at 237 (holding a debtor's reliance on business partner was an appropriate justification where the partner was sophisticated and the debtor was not).

Further, he claims he is not obligated to produce documents from Saratoga Siding because he never owned the business and he does not have access to the records. However, courts reject this argument where all the books and records are under the debtor's control or control of his immediate family. *See Desiderio v. Devani (In re Devani)*, 556 B.R. 37, 42 (Bankr. E.D.N.Y. 2016) (holding lack of access justification invalid when the business solely was owned by the debtor's family and the debtor's immediate family had control of the business's books and records). Here, Cefalu cannot claim he lacked access to the records since he ran Saratoga Siding, his brother owned it, and his mother kept the books. *See Gormally*, 550 B.R. at 53 (holding that where a debtor who "never testified that he was unable to obtain business records . . . [o]ne would reasonably assume that [the debtor] could have easily contacted his brothers to obtain this information"). Moreover, the Debtor produced bank statements for Principessa – a business for which he was a manager but had no personal ownership interest. The Debtor does not explain why he was able to produce the records for Principessa but unable to produce responsive records for Saratoga Siding or Millenium.

Cefalu also generally alleges that he went above and beyond trying to produce adequate records. He stated that he "spent weeks copying documents" and "went out of [his] way…with the amount of statements and everything that was provided, went out of my way to go overboard with satisfying your [the UST's] request." (Tr. 170:3–4; Tr. 213:6–10). Cefalu also testified that he "spent a lot of time and care to make sure that you [the UST] got all that stuff." (Tr. 213:16–17). The Court finds that Cefalu's position that he went overboard difficult to fathom when he failed to produce any responsive records from Saratoga Siding or Millenium and never testified that he was unable to obtain them. *See Gormally*, 550 B.R. at 53. Since Cefalu could have obtained the records for Saratoga personally, or through his brother or mother, he has not provided the Court with a justification for his failure to maintain adequate books and records.

## CONCLUSION

To summarize, the UST met his burden that the Debtor's financial condition and business transactions cannot be ascertained. The Debtor offered no valid justification for his failure to keep and/or produce adequate documents and records. This case is a prime example that if a debtor could hide his business transactions behind corporate formalities and familial facades, then interested parties would never be able to ascertain the debtor's financial condition. For all the foregoing reasons, Cefalu's discharge is denied pursuant to Section 727(a)(3). Since the Court has reached a determination on this cause of action, it is unnecessary to reach a determination on the remaining causes of action.

It is SO ORDERED.

Dated: April 13, 2020                                  /s/ Robert E. Littlefield, Jr.
       Albany, New York                                Robert E. Littlefield, Jr.
                                                       United States Bankruptcy Judge